# Illinois Anti-Predatory
# Lending Database
# Program

## Certificate of Exemption

Doc#: 1007744003 Fee: $64.25
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 03/18/2010 09:40 AM Pg: 1 of 14

**Report Mortgage Fraud**
**800-532-8785**

The property identified as:   **PIN:** 26-06-202-020-0000

**Address:**
**Street:**   8712 S. Commercial Avenue
**Street line 2:**
**City:** Chicago          **State:** IL          **ZIP Code:** 60617

**Lender:** MB Financial Bank, N.A.

**Borrower:** Veronica Yepez

**Loan / Mortgage Amount:** $346,929.04

This property is located within Cook County and the transaction is exempt from the requirements of 765 ILCS 77/70 et seq. because the application was taken by an exempt entity.

S _Y_
P _1Y_
S ___
M _Y_
SC ___
E _N_
INT _YH_

**Certificate number:**                                    **Execution date:** 02/15/2010

Exhibit C

RECORDATION REQUESTED BY:
  MB Financial Bank, N.A.
  Retail Banking - South Chicago
  3030 E. 92nd Street
  Chicago, IL  60617

WHEN RECORDED MAIL TO:
  MB Financial Bank, N.A.
  Loan Documentation
  6111 N. River Rd.
  Rosemont, IL  60018

FOR RECORDER'S USE ONLY

This Mortgage prepared by
  Stella Periaswamy/I
  MB Financial Bank,
  6111 N. River Rd.
  Rosemont, IL 60018



## MORTGAGE

**MAXIMUM LIEN.**  At no time shall the principal amount of Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $346,929.04.

**THIS MORTGAGE** dated February 15, 2010, is made and executed between **Veronica Yepez, a Married Women**, whose address is **10648 S. Avenue B, Chicago, IL  60617** (referred to below as "Grantor") and **MB Financial Bank, N.A.**, whose address is **3030 E. 92nd Street, Chicago, IL  60617** (referred to below as "Lender").

**GRANT OF MORTGAGE.**  For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Cook County, State of Illinois:**

  **LOT 5 IN BLOCK 10 IN SUBDIVISION BY CALUMET AND CHICAGO CANAL AND DOCK COMPANY PARTS OF FRACTIONAL SECTIONS 5 AND 6, TOWNSHIP 37 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS**

The Real Property or its address is commonly known as **8712 S. Commercial Avenue, Chicago, IL  60617.**  The Real Property tax identification number is **26-06-202-020-0000.**

**CROSS-COLLATERALIZATION.**  In addition to the Note, this Mortgage secures the following described additional indebtedness:  All collateral in which Lender is granted a security interest pursuant to any loan

# MORTGAGE
## (Continued)

documents or collateral documents executed by Grantor and/or Borrower shall constitute collateral for all Indebtedness of Grantor and/or Borrower to Lender whether said Indebtedness is now existing or hereafter arising.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.** In addition to the Note, this Mortgage secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower and Grantor shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about

Loan No:█████

# MORTGAGE
## (Continued)

Page 3

or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

Loan No: █████

# MORTGAGE
# (Continued)

Page 4

---

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property.

**MORTGAGE**
Loan No: ▮▮▮▮▮▮
**(Continued)**

Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or (C)  be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and  (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing,

# MORTGAGE
## (Continued)

and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.**  Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.**  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Mortgage or upon all or any part of the  Indebtedness secured by this Mortgage;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage;  (3)  a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.**  If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.**  The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.**  This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.**  Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property.  In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property.  Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.**  The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.**  The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

Loan No: ████████

# MORTGAGE
## (Continued)

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness, including without limitation all future advances, when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Borrower, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of

Loan No: ▊▊▊▊

**MORTGAGE**
**(Continued)**

credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that

**MORTGAGE**
(Continued)

Loan No: ████

Page 9

Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time

**MORTGAGE**
Loan No: ████    **(Continued)**

for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law.  Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.**  Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale under this Mortgage, shall be in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage.  All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage.  Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.  Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**WAIVER.** GRANTOR HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES AND RELINQUISHES:
    (1)  ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (i) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CON-
NECTION WITH THIS AGREEMENT OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY BE
DELIVERED RELATED TO THIS AGREEMENT OR (ii) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH, IN
FURTHERANCE OF, OR RELATED TO THIS AGREEMENT OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT RELATED
THERETO, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A JUDGE AND NOT A JURY;
    (2)  EVERY DEFENSE, INCLUDING, WITHOUT LIMITATION, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING,
AND ANY CAUSE OF ACTION, COUNTERCLAIM OR SETOFF WHICH GRANTOR MAY HAVE TO ANY ACTION BY LENDER IN ENFORCING
THIS AGREEMENT OR ANY DOCUMENT EXECUTED IN CONNECTION WITH, RELATED TO, OR IN FURTHERANCE OF THIS AGREEMENT.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Mortgage:

**Amendments.**  This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage.  No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.**  If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require.  "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.**  Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

Loan No: █████████

# MORTGAGE
## (Continued)

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS MORTGAGE, GRANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601(b) OR ANY SIMILAR LAW EXISTING AFTER THE DATE OF THIS MORTGAGE, ANY AND ALL RIGHTS OF REDEMPTION ON GRANTOR'S BEHALF AND ON BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

Loan No: ▮▮▮▮▮▮

# MORTGAGE
## (Continued)

**Borrower.** The word "Borrower" means Juan Yepez and Veronica Yepez and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Veronica Yepez.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means and includes without limitation all loans, together with all other obligations, debts and liabilities of Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower, or any one or more of them; whether now or hereafter existing, voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated; whether Borrower may be liable individually or jointly with others; whether Borrower may be obligated as a guarantor, surety, or otherwise; whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations; and whether such Indebtedness may be or hereafter may become otherwise unenforceable.

**Lender.** The word "Lender" means MB Financial Bank, N.A., its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means that certain Promissory Note dated February 15, 2010 in the original principal amount of $173,464.52 executed by Borrower payable to the order of Lender, as amended, supplemented, modified or replaced from time to time.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described

| Loan No: ██████ | **MORTGAGE**<br>**(Continued)** | **Page 13** |

in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

X ___Veronica Yepez___
Veronica Yepez

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____Illinois_____          )
                                     ) SS
COUNTY OF _____Cook_____             )

On this day before me, the undersigned Notary Public, personally appeared **Veronica Yepez**, to me known to be the individual described in and who executed the Mortgage, and acknowledged that he or she signed the Mortgage as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___3rd___ day of ___March___, 20 __10__.

By ___Marcia Carroll___          Residing at ___3030 E. 92nd Street___
                                              ___Chgo, IL 60617___

Notary Public in and for the State of ___Illinois___

My commission expires ___9/24/2011___

**"OFFICIAL SEAL"**
MARCIA CARROLL
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 09/24/2011

---

LASER PRO Lending, Ver. 5.48.10.001   Copr. Harland Financial Solutions, Inc. 1997, 2010.   All Rights Reserved.  - IL G:\HARLAND\CFI\LPL\G03.FC TR-39039 PR-41

RECORDATION REQUESTED BY:
MB Financial Bank, N.A.
Retail Banking - South Chicago
3030 E. 92nd Street
Chicago, IL 60617

Doc#: 1007744004 Fee: $54.25
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 03/18/2010 09:40 AM Pg: 1 of 9

WHEN RECORDED MAIL TO:
MB Financial Bank, N.A.
Loan Documentation
6111 N. River Rd.
Rosemont, IL 60018

**FOR RECORDER'S USE ONLY**

This ASSIGNMENT OF RENTS prepared by:
Stella Periaswamy/Ln #290109/LR #96761
MB Financial Bank, N.A.
6111 N. River Rd.
Rosemont, IL 60018



## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated February 15, 2010, is made and executed between Veronica Yepez, a Married Women, whose address is 10648 S. Avenue B, Chicago, IL 60617 (referred to below as "Grantor") and MB Financial Bank, N.A., whose address is 3030 E. 92nd Street, Chicago, IL 60617 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Cook County, State of Illinois:

LOT 5 IN BLOCK 10 IN SUBDIVISION BY CALUMET AND CHICAGO CANAL AND DOCK COMPANY PARTS OF FRACTIONAL SECTIONS 5 AND 6, TOWNSHIP 37 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Property or its address is commonly known as 8712 S. Commercial Avenue, Chicago, IL 60617. The Property tax identification number is 26-06-202-020-0000.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Assignment secures the following described additional indebtedness: All collateral in which Lender is granted a security interest pursuant to any loan documents or collateral documents executed by Grantor and/or Borrower shall constitute collateral for all indebtedness of Grantor and/or Borrower to Lender whether said Indebtedness is now existing or hereafter arising.



## ASSIGNMENT OF RENTS
(Continued)

Loan No: ███

**FUTURE ADVANCES.** In addition to the Note, this Assignment secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Assignment secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

**THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF BORROWER AND GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Lender need not tell Borrower about any action or inaction Lender takes in connection with this Assignment. Borrower assumes the responsibility for being and keeping informed about the Property. Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Property, or any delay by Lender in realizing upon the Property. Borrower agrees to remain liable under the Note with Lender no matter what action Lender takes or fails to take under this Assignment.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in

# ASSIGNMENT OF RENTS
## (Continued)

repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Illinois and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Borrower, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Assignment and this Assignment shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Assignment or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Assignment.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: ▆▆▆▆▆

placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.**   Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.**  Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.**   Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default on Other Payments.**   Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.**  Borrower or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or Grantor's property or ability to perform their respective obligations under this Assignment or any of the Related Documents.

**Environmental Default.**   Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.**  The death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.**  The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any guarantor, endorser,

**ASSIGNMENT OF RENTS**
(Continued)

surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure

Loan No: ▉▉▉▉▉

## ASSIGNMENT OF RENTS
### (Continued)

until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**WAIVER.** GRANTOR HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES AND RELINQUISHES:

(1)  ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (i) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CON-

NECTION WITH THIS AGREEMENT OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY BE

DELIVERED RELATED TO THIS AGREEMENT OR (ii) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH, IN

FURTHERANCE OF,  OR RELATED TO THIS AGREEMENT OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT RELATED

THERETO, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A JUDGE AND NOT A JURY;

(2)  EVERY DEFENSE, INCLUDING,  WITHOUT LIMITATION, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING,

AND ANY CAUSE OF ACTION,  COUNTERCLAIM OR SETOFF  WHICH GRANTOR MAY HAVE TO ANY ACTION BY LENDER IN ENFORCING

THIS AGREEMENT OR ANY DOCUMENT EXECUTED IN CONNECTION WITH, RELATED TO, OR IN FURTHERANCE OF THIS AGREEMENT.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.**  This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law. This Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Assignment has been accepted by Lender in the State of Illinois.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Assignment shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Assignment.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1)  In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2)  If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: ▮▮▮▮▮▮

Page 7

first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Assignment.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this

Loan No: ████

# ASSIGNMENT OF RENTS
## (Continued)

Page 8

Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means Juan Yepez and Veronica Yepez.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means Veronica Yepez.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means and includes without limitation all loans, together with all other obligations, debts and liabilities of Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower, or any one or more of them; whether now or hereafter existing, voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated; whether Borrower may be liable individually or jointly with others; whether Borrower may be obligated as a guarantor, surety, or otherwise; whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations; and whether such Indebtedness may be or hereafter may become otherwise unenforceable.

**Lender.** The word "Lender" means MB Financial Bank, N.A., its successors and assigns.

**Note.** The word "Note" means that certain Promissory Note dated February 15, 2010 in the original principal amount of $173,464.52 executed by Borrower payable to the order of Lender, as amended, supplemented, modified or replaced from time to time.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT. THIS DOCUMENT IS EXECUTED ON FEBRUARY 15, 2010.

Loan No: ▮▮▮▮▮

## ASSIGNMENT OF RENTS
### (Continued)

Page 9

**GRANTOR:**

X _Veronica Yepez_
Veronica Yepez

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Illinois___ )
                                              ) SS
COUNTY OF ___Cook___ )

On this day before me, the undersigned Notary Public, personally appeared **Veronica Yepez**, to me known to be the individual described in and who executed the ASSIGNMENT OF RENTS, and acknowledged that he or she signed the Assignment as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___3rd___ day of ___March___, 20 _10_.

By ___Marcia Carroll___    Residing at ___3030 E. 92nd St___

Notary Public in and for the State of ___Illinois___    ___Chgo Il 60617___

My commission expires ___9/24/2011___

```
"OFFICIAL SEAL"
MARCIA CARROLL
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 09/24/2011
```

LASER PRO Lending, Ver. 5.48.10.001  Copr. Harland Financial Solutions, Inc. 1997, 2010.    All Rights Reserved. - IL  G:\HARLAND\CFI\LPL\G14.FC  TR-39039  PR-41

*COOK COUNTY, IL*

This Instrument Prepared by and
After Recording Return to:

AKIN GUMP STRAUSS HAUER &
FELD LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Attention: Eric I. Wang, Esq. (Project
Bulls)



Doc#:  1132045015 Fee: $78.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 11/16/2011 10:23 AM Pg: 1 of 22

*This Space for Recorder's Use Only*

## ASSIGNMENT OF MORTGAGE AND
## OTHER RECORDED LOAN DOCUMENTS

This Assignment of Mortgage and other Recorded Loan Documents (the "Assignment") is made as of the 30th day of June, 2011, by MB Financial Bank, N.A., a national banking association, with its principal place of business at 6111 North River Road, Rosemont, Illinois 60018 (the "Assignor") in favor of ColFin Bulls Funding A, LLC, a Delaware limited liability company, with its principal place of business located at co/ Colony Capital Acquisitions, LLC 2450 Broadway, 6th Floor, Santa Monica, California 90404 (the "Assignee").

In consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby grants, bargains, sells, conveys, assigns, transfers, and sets over unto Assignee, all of its right, title, and interest in and to the agreements and documents identified on Schedule A annexed hereto and incorporated herein (individually and collectively, the "Documents") as each of the Documents may have been amended.

This Assignment is made without recourse and without any representation or warranty of any kind whatsoever, express or implied, or by operation of law, except those certain representations and warranties made by Assignor in favor of Assignee that are expressly set forth in Sections 4.1 and 4.2 of that certain Loan Purchase Agreement dated as of June 16, 2011 between Assignor and Assignee to the extent that, and only for so long as, such representations and warranties survive the Closing (as defined in the Loan Purchase Agreement). Assignee's remedies upon a breach in any material respect of any such representations and warranties are limited solely to those remedies of Assignee expressly set forth in Sections 8 and 9 of the Loan Purchase Agreement.

*[signature and notary pages follow]*

*COOK COUNTY, IL*

       IN WITNESS WHEREOF, the said Assignor has duly executed this Assignment as of the date set forth above.

MB FINANCIAL BANK, N.A.

By:_____

Name:   Thomas E. Prothero

Title:     SVP & COO

*COOK COUNTY, IL*

STATE OF _____ IL _____ )
                                                    ) SS:
COUNTY OF _____ Cook _____ )

On the _____ 26 _____ day of ~~June~~ August in the year 2011 before me, the undersigned, personally appeared Thomas E. Prothero the SVP+ (a) _____ of MB Financial Bank, N.A., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as _____ SVP+ COO _____ , that by his signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county and state referenced above.

_____
Notary Public
My Commission Expires: 5/7/14

**"OFFICIAL SEAL"**
EMILY L. ACHTSTATTER
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 05/07/2014

## Schedule A - Loan No ██████

### Assigned Recorded Loan Documents

Mortgage recorded on 07/05/2006 as Document No. 0618605123 in the real estate records of Cook County, Illinois, made by JOSE H BARRETO AND ROSARIO P BARRETO in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 07/05/2006 as Document No. 0618605126 in the real estate records of Cook County, Illinois, made by JOSE H BARRETO AND ROSARIO P BARRETO in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOT 10 AND 11 IN BLOCK 6 IN S.E. GROSS BOULEVARD ADDITION TO CHICAGO IN THE WEST 1/2 OF THE NORTH WEST 1/4 OF SECTION 23, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 3718 N. Springfield Ave., Chicago, IL 60618. The Real Property tax identification number is 13-23-117-017-0000.

Cook Cty, IL - Sch.A-1

## Schedule A - Loan No ███████

### Assigned Recorded Loan Documents

Mortgage recorded on 09/07/2006 as Document No. 0625041042 in the real estate records of Cook County, Illinois, made by Interstate Bank, as Trustee U/T/A dated 09/18/02 A/K/A Trust #02-364 in favor of INTERSTATE BANK, as predecessor-in-interest to MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 09/07/2006 as Document No. 0625041043 in the real estate records of Cook County, Illinois, made by Interstate Bank, as Trustee U/T/A dated 09/18/02 A/K/A Trust #02-364 in favor of INTERSTATE BANK, as predecessor-in-interest to MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

UNITS 3 AND 4 IN CREEKVIEW II CONDOMINIUM AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED PARCEL OF REAL ESTATE:

LOT 5 (EXCEPT THE EAST 70 FEET THEREOF) IN BLOCK 10 IN ELMORE'S OAK PARK AVENUE ESTATES, BEING A SUBDIVISION OF THE NORTHWEST 1/4 OF SECTION 30, TOWNSHIP 36 NORTH, RANGE 13,

EAST OF THE THIRD PRINCIPAL MERIDIAN, (EXCEPT THAT PART OF DRAINAGE DITCH CONVEYED BY DOCUMENT 377150) AS PER PLAT RECORDED APRIL 25, 1929 AS DOCUMENT 10351098 (AND EXCEPT THAT PART BOUNDED AND DESCRIBED AS FOLLOWS: WHICH WAS CONDEMNED FOR THE BENEFIT OF THE STATE OF ILLINOIS DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 5; THENCE SOUTH ALONG THE WEST LINE OF SAID LOT 5 (ALSO BEING THE EAST LINE OF HARLEM AVENUE) A DISTANCE OF 30.0 FEET TO A POINT; THENCE EAST AT RIGHT ANGLES TO THE LAST DESCRIBED COURSE A DISTANCE OF 46.409 FEET MORE OR LESS TO THE NORTHERLY LINE OF SAID LOT 5; THENCE NORTHWESTERLY ALONG SAID NORTHERLY LINE OF SAID LOT 5 A DISTANCE OF 55.25 FEET TO THE POINT OF BEGINNING) IN COOK COUNTY, ILLINOIS WHICH SURVEY IS ATTACHED AS EXHIBIT "A" MADE BY STANDARD BANK AND TRUST COMPANY, AN ILLINOIS BANKING CORPORATION, AS TRUSTEE UNDER TRUST AGREEMENT DATED DECEMBER 12, 1989 KNOWN AS TRUST NUMBER 12438 AND RECORDED AS DOCUMENT 91093710 TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as  17023 & 17025 S. Harlem Ave., Tinley Park, IL 60477. The Real Property tax identification number is 28-30-112-016-1003 and 28-30-112-016-1004.

**Schedule A - Loan No** ███████

**Assigned Recorded Loan Documents**

Mortgage recorded on 09/15/2003 as Document No. 0325811262 in the real estate records of Cook County, Illinois, made by SEVERIANO F. ALFARO, in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 09/15/2003 as Document No. 0325811263 in the real estate records of Cook County, Illinois, made by SEVERIANO F. ALFARO, in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOT 5 IN A. J. TULLOCK'S SECOND SUBDIVISION OF THE WEST 174.85 FEET OF BLOCK 6 IN THE SUPERIOR COURT COMMISSIONER'S PARTITION OF THE WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 25, TOWNSHIP 39 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 3123 W. 26th St., Chicago, IL 60623. The Real Property tax identification number is 16-25-301-001-0000.

Cook Cty, IL - Sch.A-3

**Schedule A** - Loan No ███████

**Assigned Recorded Loan Documents**

Mortgage recorded on 10/03/2006 as Document No. 0627640016 in the real estate records of Cook County, Illinois, made by PHILLIP S KIM AND ANNA S KIM in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 10/03/2006 as Document No. 0627640017 in the real estate records of Cook County, Illinois, made by PHILLIP S KIM AND ANNA S KIM in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

THE NORTH 1/2 OF LOT 72 AND THE NORTH 1/2 OF LOT 73 (EXCEPT THE WEST 17 FEET THEREOF) IN DIXIE GARDENS, BEING A SUBDIVISION OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 17 AND THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 AND THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 18, TOWNSHIP 35, NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 525 Ashland Avenue, Chicago Heights, IL 60411. The Real Property tax identification number is 32-17-115-036-0000.

**Schedule A - Loan No** █████████

**Assigned Recorded Loan Documents**

Mortgage recorded on 06/09/2004 as Document No. 0416116003 in the real estate records of Cook County, Illinois, made by Chicago Title Land Trust Company under Trust Agreement dated July 22, 1988 and known as Trust No. 1091920 in favor of MB Financial, N.A., as may be amended or modified.

Assignment of Rents recorded on 06/09/2004 as Document No. 0416116004 in the real estate records of Cook County, Illinois, made by Chicago Title Land Trust Company under Trust Agreement dated July 22, 1988 and known as Trust No. 1091920 in favor of MB Financial, N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOTS 82 AND 83 (EXCEPT THAT PART THEREOF CONVEYED TO THE CITY OF CHICAGO FOR THE WIDENING OF LINCOLN AVENUE) IN THE KRENN AND DATO'S POLO GROUNDS ADDITION TO NORTH EDGEWATER IN THE SOUTHWEST 1/4 OF SECTION 1,  TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as  5907-5909 N. Lincoln Avenue, Chicago, IL  60659.

The Real Property tax identification number is 13-01-305-036-0000 and 13-01-305-037-0000.

Cook Cty, IL - Sch.A-5

**Schedule A** - Loan No ███████

**Assigned Recorded Loan Documents**

Mortgage recorded on 11/06/2006 as Document No. 0631040093 in the real estate records of Cook County, Illinois, made by DAVID M PARK, in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 11/06/2006 as Document No. 0631040094 in the real estate records of Cook County, Illinois, made by DAVID M PARK in favor of MB Financial Bank, N.A.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

THE EAST 300 FEET OF THE NORTH 2 ACRES OF THAT PART LYING BETWEEN THE CENTER LINE OF GREENWOOD AVENUE AND MILWAUKEE AVENUE OF LOT 3 OF OWNERS SUBDIVISION OF THE WEST 24 FEET OF THE NORTHEAST FRACTIONAL 1/4 OF SECTION 11, TOWNSHIP 41 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, AND THE EAST 1/2 OF THE NORTHWEST FRACTIONAL 1/4 OF SAID SECTION 11, AND THAT PART OF LOT 1 IN ASSESSOR'S DIVISION OF THE SOUTHWEST 1/4 OF SAID SECTION 11 AND ALL OF LOTS 2, 3, AND 4 IN ASSESSOR'S DIVISION OF THE EAST 1/2 OF THE SOUTHWEST 1/4 AND THE WEST 1/2 OF THE SOUTHEAST 1/4 OF SAID SECTION AND OF THE SOUTH 6.19 ACRES OF THAT PART OF THE WEST 1/2 OF THE SOUTHWEST 1/4 OF SAID SECTION EAST OF THE CENTER LINE OF MILWAUKEE AVENUE, (EXCEPTING THEREFROM THAT PART OF THE LAND ALONG THE EAST LINE TAKEN FOR ROAD PURPOSES), IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 222 Greenwood Road, Glenview, IL 60025. The Real Property tax identification number is 09-11-301-023-0000.

**Schedule A - Loan No** ███

**Assigned Recorded Loan Documents**

Mortgage recorded on 11/06/2006 as Document No. 0631040095 in the real estate records of Cook County, Illinois, made by DAVID M PARK AND SUKHUI PARK, in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 11/06/2006 as Document No. 0631040096 in the real estate records of Cook County, Illinois, made by DAVID M PARK AND SUKHUI PARK, in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOTS 11, 12 AND 13 IN PALWAUKEE BUSINESS CENTER UNIT 1, BEING A SUBDIVISION IN THE SOUTHEAST 1/4 OF SECTION 11, TOWNSHIP 42 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 18, 1985 AS DOCUMENT 85106826, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 601-603 Chaddick Drive, Wheeling, IL 60090. The Real Property tax identification number is 03-11-408-001-0000; 03-11-408-002-0000 and 03-11-408-003-0000.

Cook Cty, IL - Sch.A-7

**Schedule A - Loan No** ███████

**Assigned Recorded Loan Documents**

Mortgage recorded on 02/16/2000 as Document No. 00116077 in the real estate records of Cook County, Illinois, made by MAGAN M PATEL AND SAVITA M PATEL, in favor of Manufacturers Bank, as predecessor-in-interest to MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 02/16/2000 as Document No. 00116078 in the real estate records of Cook County, Illinois, made by MAGAN M PATEL AND SAVITA M PATEL , in favor of Manufacturers Bank, as predecessor-in-interest to MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOT 23 IN BLOCK 3 IN PICKET'S SUBDIVISION OF THAT PART OF LOT 13 IN THE ASSESSOR'S DIVISION OF UNSUBDIVIDED LANDS IN THE NORTHEAST 1/4 AND THE EAST 1/2 OF THE NORTHWEST 1/4 OF SECTION 6, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 2114 W. Division St., Chicago, IL 60622. The Real Property tax identification number is 17-06-128-035-0000.

**Schedule A - Loan No** ████████

**Assigned Recorded Loan Documents**

Mortgage recorded on 01/08/2007 as Document No.0700813020 in the real estate records of Cook County, Illinois, made by UN CHUL SHIN AND MI YOUNG SHIN, in favor of MB Financial Bank N.A., as may be amended or modified.

This document affects the following Real Property located in Cook County, State of Illinois described as follows:

LOT 3 IN HELEN PAROUBEK'S RESUBDIVISION OF THAT PART OF LOT 6 LYING SOUTHERLY OF THE SOUTHERLY LINE OF LINCOLN AVENUE (EXCEPT THE SOUTH 388.0 FEET OF SAID LOT 6) IN NICHOLASHAUPT HEIRS SUBDIVISION OF THE SOUTH 20 ACRES OF THE SOUTH EAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 20, TOWNSHIP 41 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, (EXCEPT THE SOUTH 8.50 FEET AND THAT PART OF THE WEST 264 FEET SOUTH OF CENTER OF SAID ROAD) IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 8432 Morton Avenue, Morton Grove, IL 60053. The

**Real Property tax identification number is 10-20-122-074-0000.**

Cook Cty, IL - Sch.A-9

## Schedule A - Loan No ███████

### Assigned Recorded Loan Documents

Mortgage recorded on 05/26/2005 as Document No. 0514633159 in the real estate records of Cook County, Illinois, made by MI YOUNG SHIN AND HWA MOK YU, in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 05/26/2005 as Document No. 0514633160 in the real estate records of Cook County, Illinois, made by MI YOUNG SHIN AND HWA MOK YU in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

THE SOUTH 30 FEET OF THE NORTH 180 FEET OF THE SOUTH 360 FEET OF THE WEST 157 FEET OF LOT 4 IN THE SUBDIVISION OF THAT PART LYING WEST OF THE CENTER OF THE SLOUGH OF THE WEST WEST 1/2 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS
AND
THE SOUTH 15 FEET OF THE NORTH 30 FEET OF THE SOUTH 240 FEET OF THE WEST 157 FEET OF LOT 4 IN THE SUBDIVISION OF THAT PART LYING WEST OF CENTER OF THE SLOUGH OF THE WEST 1/2 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 5311 N. Kedzie Ave., Chicago, IL 60625-4711. The Real Property tax identification number is 13-12-100-042-0000.

Cook Cty, IL - Sch.A-10

**Schedule A - Loan No** ▮▮▮▮▮

**Assigned Recorded Loan Documents**

Mortgage recorded on 12/20/2006 as Document No. 0635408145 in the real estate records of Cook County, Illinois, made by UN CHUL SHIN AND MI YOUNG SHIN, in favor of MB Financial Bank N.A., as may be amended or modified.

This document affects the following Real Property located in Cook County, State of Illinois described as follows:

```
LOT 3 IN HELEN PAROUBEK'S RESUBDIVISION OF THAT PART OF LOT 6
LYING SOUTHERLY OF THE SOUTHERLY LINE OF LINCOLN AVENUE (EXCEPT
THE SOUTH 388.0 FEET OF SAID LOT 6) ON NICHOLASHAUPT HEIRS
SUBDIVISION OF THE SOUTH 20 ACRES OF THE SOUTH EAST 1/4 OF THE
NORTHWEST 1/4 OF SECTION 20, TOWNSHIP 41 NORTH, RANGE 13, EAST OF
THE THIRD PRINCIPAL MERIDIAN, (EXCEPT THE SOUTH 8.50 FEET AND
THAT PART OF THE WEST 264 FEET SOUTH OF CENTER OF SAID ROAD) IN
COOK COUNTY, ILLINOIS. PIN#: 10-20-122-074-0000
```

which currently has the address of    8432 MORTON AVE

[Street]

MORTON GROVE                , Illinois              60053        ("Property Address"):
    [City]                                        [Zip Code]

**10-20-122-074-0000**

**Schedule A** - Loan No ▮▮▮▮▮

**Assigned Recorded Loan Documents**

Mortgage recorded on 09/15/2003 as Document No. 0325811275 in the real estate records of Cook County, Illinois, made by DESMOND WHYTE AND DINAH M WHYTE, in favor of MB Financial Bank N.A., as may be amended or modified.

This Document affects the following Real Property located in Cook County, State of Illinois described as follows:

PARCEL 1:
LOT 18 AND THE NORTHWEST 15 FEET OF LOT 19 IN BLOCK 4 IN CALUMET PARK FIRST ADDITION, A SUBDIVISION OF THE WEST 674.13 FEET OF LOTS 1 TO 3 IN SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF SECTION 2, TOWNSHIP 36 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as  14481 Lincoln Avenue, Dolton, IL  60419.  The Real Property tax identification number is 29-02-316-056-0000.

Cook Cty, IL - Sch.A-12

**Schedule A - Loan No** █████

**Assigned Recorded Loan Documents**

Mortgage recorded on 03/18/2010 as Document No. 1007744005 in the real estate records of Cook County, Illinois, made by VERONICA YEPEZ, in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 03/18/2010 as Document No. 1007744006 in the real estate records of Cook County, Illinois, made by VERONICA YEPEZ, in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOT 4 IN BLOCK 10 IN SUBDIVISION BY CALUMET AND CHICAGO CANAL AND DOCK COMPANY PARTS OF FRACTIONAL SECTIONS 5 AND 6, TOWNSHIP 37 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 8710 S. Commercial Avenue, Chicago, IL 60617. The Real Property tax identification number is 26-06-202-019-0000.

**Schedule A - Loan No** ▮▮▮▮

**Assigned Recorded Loan Documents**

Mortgage recorded on 03/18/2010 as Document No. 1007744003 in the real estate records of Cook County, Illinois, made by VERONICA YEPEZ in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 03/18/2010 as Document No. 1007744004 in the real estate records of Cook County, Illinois, made by VERONICA YEPEZ in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOT 5 IN BLOCK 10 IN SUBDIVISION BY CALUMET AND CHICAGO CANAL AND DOCK COMPANY PARTS OF FRACTIONAL SECTIONS 5 AND 6, TOWNSHIP 37 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 8712 S. Commercial Avenue, Chicago, IL 60617. The Real Property tax identification number is 26-06-202-020-0000.

**Schedule A -** Loan No ▇▇▇▇▇

**Assigned Recorded Loan Documents**

Mortgage recorded on 12/19/2006 as Document No. 0635331025 in the real estate records of Cook County, Illinois, made by JUAN G YEPEZ AND VERONICA YEPEZ in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 12/19/2006 as Document No. 0635331024 in the real estate records of Cook County, Illinois, made by JUAN G YEPEZ AND VERONICA YEPEZ in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOTS 36 AND 37 IN BLOCK 27 IN IRONWORKER'S ADDITION TO SOUTH CHICAGO, BEING A SUBDIVISION OF THE SOUTH FRACTIONAL 1/2 OF FRACTIONAL SECTION 8, TOWNSHIP 37 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 10429 S. Ewing Avenue, Chicago, IL 60617. The Real Property tax identification number is 26-08-322-011-0000 and 26-08-322-012-0000 .

Cook Cty, IL - Sch.A-15

**Schedule A - Loan No** ▮▮▮▮▮

**Assigned Recorded Loan Documents**

Mortgage recorded on 12/19/2006 as Document No. 0635331026 in the real estate records of Cook County, Illinois, made by JUAN G YEPEZ AND VERONICA YEPEZ in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 12/19/2006 as Document No. 0635331023 in the real estate records of Cook County, Illinois, made by JUAN G YEPEZ AND VERONICA YEPEZ in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOT 28 IN BLOCK 2 IN THE STATELINE PARK, BEING PART OF PETER FOOTE'S SUBDIVISION IN THE NORTHEAST FRACTIONAL 1/4 OF SECTION 17, TOWNSHIP 37 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 10648 S. Avenue B, Chicago, IL 60617. The Real Property tax identification number is 26-17-203-038-0000.

**Schedule A - Loan No** ███████

**Assigned Recorded Loan Documents**

Mortgage recorded on 08/08/2005 as Document No. 0522018050 in the real estate records of Cook County, Illinois, made by AURORA GARCIA AND JUAN R GARCIA in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 08/08/2005 as Document No. 0522018051 in the real estate records of Cook County, Illinois, made by AURORA GARCIA AND JUAN R GARCIA in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

LOT 1 IN BLOCK 2 IN ADAM SMITH SUBDIVISION OF BLOCK 10 IN J. H. REE'S SUBDIVISION OF WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 36 AND SOUTH EAST 1/4 OF SECTION 35 LYING SOUTH OF ILLINOIS MICHIGAN CANAL IN TOWNSHIP 39 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 3834 S. Kedzie Avenue, Chicago, IL 60632. The Real Property tax identification number is 16-35-414-037-0000.

## Schedule A - Loan No ███

### Assigned Recorded Loan Documents

Mortgage recorded on 09/06/2006 as Document No. 0624931049 in the real estate records of Cook County, Illinois, made by ROBERT O BYUN in favor of MB Financial Bank N.A., as may be amended or modified.

Assignment of Rents recorded on 09/06/2006 as Document No. 0624931050 in the real estate records of Cook County, Illinois, made by ROBERT O BYUN in favor of MB Financial Bank N.A., as may be amended or modified.

Both of which Documents affect the following Real Property located in Cook County, State of Illinois described as follows:

## Real Property tax identification number is 13-01-319-001-0000.

LOT 1 IN BLOCK 44 IN KAISER AND COMPANY'S PETERSON WOODS ADDITION TO ARCADIA TERRACE, IN THE SOUTHWEST 1/4 OF SECTION 1, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JANUARY 7, 1915 AS DOCUMENT 5557707 IN COOK COUNTY, ILLINOIS

· The Real Property or its address is commonly known as  5832-34 N. Lincoln Avenue, Chicago, IL  60659.  The

### Schedule A - Loan No ███████

### Assigned Recorded Loan Documents

Mortgage recorded on 10/05/2006 as Document No. 0627816000 in the real estate records of Cook County, Illinois, made by ROBERT O BYUN AND KYOUNG SEON KIM in favor of MB Financial Bank N.A., as may be amended or modified.

This Document affects the following Real Property located in Cook County, State of Illinois described as follows:

UNIT NUMBER 306 IN THE LINCOLN POINT CONDOMINIUM, AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED TRACT OF LAND:

LOTS 1 THROUGH 7, BOTH INCLUSIVE, AND THE NORTHWESTERLY 8.95 FEET OF LOT 8 (EXCEPT THAT PART LYING BETWEEN THE SOUTHWESTERLY LINE OF LINCOLN AVENUE AND A LINE 17 FEET SOUTHWESTERLY OF, MEASURED AT RIGHT ANGLES THERETO, AND PARALLEL WITH THE SOUTHWESTERLY LINE OF LINCOLN AVENUE), IN BLOCK 36 OF W. F. KAISER AND COMPANY'S PETERSON WOODS ADDITION TO ARCADIA TERRACE, IN THE SOUTHWEST 1/4 OF SECTION 1,

TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

WHICH SURVEY IS ATTCHED AS EXHIBIT "B" TO THE DECLARATION OF CONDOMINIUM RECORDED DECEMBER 1, 2004 AS DOCUMENT NUMBER 0433619032; TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTERST IN THE COMMON ELEMENTS IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 5924 N. Lincoln Avenue #306, Chicago, IL. The Real Property tax identification number is 13-01-311-050-1014.



Doc#: 1209431061 Fee: $72.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 04/03/2012 11:58 AM Pg: 1 of 18

**Prepared By and After Recording Return To:**

Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Attention: Arsineh Baghdasarian (Bulls)

_____[Space Above This Line For Recording Data]_____

## ASSIGNMENT OF MORTGAGE AND OTHER LOAN DOCUMENTS

KNOW ALL MEN BY THESE PRESENTS:

FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged, Colfin Bulls Funding A, LLC , a Delaware limited liability company (the "Assignor"), having a mailing address at 2450 Broadway, 6th Floor, Santa Monica, California 90404, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer, and set over unto ColFin Bulls A Finance Sub, LLC, a Delaware limited liability company, having a mailing address at 2450 Broadway, 6th Floor, Santa Monica, California 90404, its successors and assigns, all its right, title and interest in and to those certain instruments described below (the "Loan Documents"):

1. Mortgage (and any and all notes secured thereby), dated January 31, 2002 (the "Mortgage A-1"), executed by Cosmopolitan Bank and Trust not personally but as trustee u/t/a dated September 26, 1995 and known as trust number 30359, in favor of 1st Security Federal Savings Bank as predecessor in interest to MB Financial Bank, N.A., which Mortgage A-1 was recorded on February 27, 2002, as Document Number 0020229852 in the real estate records of the County of Cook, State of Illinois ("Official Records"), as may be amended or modified.

1

Such Mortgage A-1 was assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 16, 2011, as Document Number 1132045021 in the Official Records.

The Mortgage A-1, as such may have been assigned and modified, covers the following described property:

SEE ATTACHED EXHIBIT A-1

2.    Mortgage (and any and all notes secured thereby), dated November 17, 2006 (the "Mortgage A-2"), executed by Un Chul Shin and Mi Young Shin, in favor of MB Financial Bank, N.A., which Mortgage A-2 was recorded on January 8, 2007, as Document Number 0700813020 in the Official Records, as may be amended or modified.

Such Mortgage A-2 was assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 16, 2011, as Document Number 1132045015 in the Official Records.

The Mortgage A-2, as such may have been assigned and modified, covers the following described property:

SEE ATTACHED EXHIBIT A-2

3.    Mortgage (and any and all notes secured thereby), dated July 18, 2005 (the "Mortgage A-3"), executed by Aurora Garcia and Juan R. Garcia, in favor of MB Financial Bank, N.A., which Mortgage A-3 was recorded on August 8, 2005, as Document Number 0522018050 in the Official Records, as may be amended or modified.

Assignment of Rents dated July 18, 2005 (the "ALR A-3"), executed by Aurora Garcia and Juan R. Garcia, in favor of MB Financial Bank, N.A., which ALR A-3 was recorded on August 8, 2005, as Document Number 0522018051 in the Official Records, as may be amended or modified.

Such Mortgage A-3 and ALR A-3 were assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 16, 2011, as Document Number 1132045015 in the Official Records.

2

The Mortgage A-3 and ALR A-3, as such may have been assigned and modified, cover the following described property:

SEE ATTACHED EXHIBIT A-3

4.    Mortgage (and any and all notes secured thereby), dated February 15, 2010 (the "Mortgage A-4"), executed by Veronica Yepez, in favor of MB Financial Bank, N.A., which Mortgage A-4 was recorded on March 18, 2010, as Document Number 1007744003 in the Official Records, as may be amended or modified.

Assignment of Rents dated February 15, 2010 (the "ALR A-4"), executed by Veronica Yepez, in favor of MB Financial Bank, N.A., which ALR A-4 was recorded on March 18, 2010, as Document Number 1007744004 in the Official Records, as may be amended or modified.

Such Mortgage A-4 and ALR A-4 were assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 16, 2011, as Document Number 1132045015 in the Official Records.

The Mortgage A-4 and ALR A-4, as such may have been assigned and modified, cover the following described property:

SEE ATTACHED EXHIBIT A-4

5.    Mortgage (and any and all notes secured thereby), dated February 15, 2010 (the "Mortgage A-5"), Veronica Yepez, in favor of MB Financial Bank, N.A., which Mortgage A-5 was recorded on March 18, 2010, as Document Number 1007744005 in the Official Records, as may be amended or modified.

Assignment of Rents dated February 15, 2010 (the "ALR A-5"), executed by Veronica Yepez, in favor of MB Financial Bank, N.A., which ALR A-5 was recorded on March 18, 2010, as Document Number 1007744006 in the Official Records, as may be amended or modified.

Such Mortgage A-5 and ALR-A-5 were assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 16, 2011, as Document Number 1132045015 in the Official Records.

The Mortgage A-5 and ALR-A-5, as such may have been assigned and modified, covers the following described property:

SEE ATTACHED EXHIBIT A-5

3

6.   Mortgage (and any and all notes secured thereby), dated August 25, 2009 (the "Mortgage A-6"), executed by Maro Bellwood, Inc., in favor of MB Financial Bank, N.A., which Mortgage A-6 was recorded on August 27, 2009, as Document Number 0923929021 in the Official Records, as may be amended or modified.

Landlord's Assignment of Rents and Leases and Lessee's Consent to Assignment of Rents and Subordination of Lease to Mortgage dated August 25, 2009 (the "ALR A-6"), executed by Maro Bellwood, Inc., in favor of MB Financial Bank, N.A., which ALR A-6 was recorded on August 27, 2009, as Document Number 0923929022 in the Official Records, as may be amended or modified.

Such Mortgage A-6 and ALR A-6 were assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 15, 2011, as Document Number 1131945042 in the Official Records.

The Mortgage A-6 and ALR A-6, as such may have been assigned and modified, cover the following described property:

SEE ATTACHED EXHIBIT A-6

7.   Mortgage, (and any and all notes secured thereby), dated September 11, 2003 (the "Mortgage A-7"), Benjamin Pourkhalili and Banafsheh Moghtadaie, in favor of MB Financial Bank, N.A., which Mortgage A-7 was recorded on December 19, 2003, as Document Number 0335301053 in the Official Records, as may be amended or modified.

Such Mortgage A-7 was assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 16, 2011, as Document Number 1132045021 in the Official Records.

The Mortgage A-7, as such may have been assigned and modified, covers the following described property:

SEE ATTACHED EXHIBIT A-7

8.   Mortgage (and any and all notes secured thereby), dated September 11, 2003 (the "Mortgage A-8"), executed by Benjamin Pourkhalili, in favor of MB Financial Bank, N.A., which Mortgage A-8 was recorded on December 19, 2003, as Document Number 0335301054 in the Official Records, as may be amended or modified.

4

Assignment of Rents dated September 11, 2003 (the "ALR A-8"), executed by Benjamin Pourkhalili, in favor of MB Financial Bank, N.A., which ALR A-8 was recorded on December 19, 2003, as Document Number 0335301055 in the Official Records, as may be amended or modified.

Such Mortgage A-8 and ALR A-8 were assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 16, 2011, as Document Number 1132045021 in the Official Records.

The Mortgage A-8 and ALR A-8, as such may have been assigned and modified, cover the following described property:

SEE ATTACHED EXHIBIT A-8

9.    Mortgage (and any and all notes secured thereby), dated September 11, 2003 (the "Mortgage A-9"), executed by Benjamin Pourkhalili, in favor of MB Financial Bank, N.A., which Mortgage A-9 was recorded on December 19, 2003, as Document Number 0335301056 in the Official Records, as may be amended or modified.

Assignment of Rents dated September 11, 2003 (the "ALR A-9"), executed by Benjamin Pourkhalili, in favor of MB Financial Bank, N.A., which ALR A-9 was recorded on December 19, 2003, as Document Number 0335301057 in the Official Records, as may be amended or modified.

Such Mortgage A-9 and ALR A-9 were assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 16, 2011, as Document Number 1132045021 in the Official Records.

The Mortgage A-9 and ALR A-9, as such may have been assigned and modified, cover the following described property:

SEE ATTACHED EXHIBIT A-9

10.    Mortgage (and any and all notes secured thereby), dated February 23, 2007 (the "Mortgage A-10"), executed by 1803 Winchester LLC, in favor of MB Financial Bank, N.A., which Mortgage A-10 was recorded on March 30, 2007, as Document Number 0708942033 in the Official Records, as may be amended or modified.

5

Assignment of Rents dated February 23, 2007 (the "ALR A-10"), executed by 1803 Winchester LLC, in favor of MB Financial Bank, N.A., which ALR A-10 was recorded on March 30, 2007, as Document Number 0708942034 in the Official Records, as may be amended or modified.

Such Mortgage A-10 and ALR A-10 were assigned by MB Financial Bank, N.A. to Colfin Bulls Funding A, LLC, pursuant to that certain Assignment of Mortgage and Other Recorded Loan Documents dated June 30, 2011, and recorded on November 15, 2011, as Document Number 1131945042 in the Official Records.

The Mortgage A-10 and ALR A-10, as such may have been assigned and modified, cover the following described property:

SEE ATTACHED EXHIBIT A-10

TO HAVE AND TO HOLD THE SAME UNTO SAID COLFIN BULLS A FINANCE SUB, LLC, ITS SUCCESSORS AND ASSIGNS.

**THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL. THE LOAN IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO THE COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING ASSIGNOR OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

6

Illinois, Cook_Bulls A_Items 106, 131, 147, 154, 171, 174, 178__TD-ALR Assignment
202542762

IN WITNESS WHEREOF, Colfin Bulls Funding A, LLC,  its successors and assigns has caused this instrument to be executed this **26** day of **March**, 2012, effective as of the **26**th day of **March**, 2012.

ASSIGNOR:

Colfin Bulls Funding A, LLC

By: _____

Name:  Mark M. Hedstrom

Its:     Vice President

7

## ACKNOWLEDGMENT

State of California
County of _____ Los Angeles _____ )

On __March 26, 2012__ before me, __Stephanie M. Shaw, Notary Public_____
(insert name and title of the officer)

personally appeared ___Mark M. Hedstrom_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

STEPHANIE M. SHAW
Comm. #1963590
Notary Public • California
Los Angeles County
Comm. Expires Dec 12, 2015

Signature __Stephanie M. Shaw_____    **(Seal)**

## EXHIBIT A-1
### (Legal Description)

LOT 5 IN JOHN OLIVER'S SUBDIVISION OF LOTS 18, 19, 22 AND 23 IN BLOCK 2 IN COOK AND ANERSON'S SUBDIVISION OF THE WEST 1/2 OF THE NORTHEAST 1/4 OF SECTION 24, TOWNSHIP 39 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS...........................................................................................................................................

PIN # 16-24-206-013-0000.................................................................................

PROPERTY ADDRESS:  1261 S California  Chicago, IL  60608

9

## EXHIBIT A-2
### (Legal Description)

LOT 3 IN HELEN PAROUBEK'S RESUBDIVISION OF THAT PART OF LOT 6 LYING SOUTHERLY OF THE SOUTHERLY LINE OF LINCOLN AVENUE (EXCEPT THE SOUTH 388.0 FEET OF SAID LOT 6) IN NICHOLASHAUPT HEIRS SUBDIVISION OF THE SOUTH 20 ACRES OF THE SOUTH EAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 20, TOWNSHIP 41 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, (EXCEPT THE SOUTH 8.50 FEET AND THAT PART OF THE WEST 264 FEET SOUTH OF CENTER OF SAID ROAD) IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as  8432 Morton Avenue, Morton Grove, IL  60053.  The

## Real Property tax identification number is 10-20-122-074-0000.

10

# EXHIBIT A-3
## (Legal Description)

LOT 1 IN BLOCK 2 IN ADAM SMITH SUBDIVISION OF BLOCK 10 IN J. H. REE'S SUBDIVISION OF WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 36 AND SOUTH EAST 1/4 OF SECTION 35 LYING SOUTH OF ILLINOIS MICHIGAN CANAL IN TOWNSHIP 39 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as  3834 S. Kedzie Avenue, Chicago, IL  60632.  The Real Property tax identification number is 16-35-414-037-0000.

11

# EXHIBIT A-4
## (Legal Description)

**LOT 5 IN BLOCK 10 IN SUBDIVISION BY CALUMET AND CHICAGO CANAL AND DOCK COMPANY PARTS OF FRACTIONAL SECTIONS 5 AND 6, TOWNSHIP 37 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS**

The Real Property or its address is commonly known as 8712 S. Commercial Avenue, Chicago, IL 60617. The Real Property tax identification number is 26-06-202-020-0000.

12

# EXHIBIT A-5
## (Legal Description)

**LOT 4 IN BLOCK 10 IN SUBDIVISION BY CALUMET AND CHICAGO CANAL AND DOCK COMPANY PARTS OF FRACTIONAL SECTIONS 5 AND 6, TOWNSHIP 37 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS**

**The Real Property or its address is commonly known as  8710 S. Commercial Avenue, Chicago, IL  60617. The Real Property tax identification number is 26-06-202-019-0000.**

13

**EXHIBIT A-6**
**(Legal Description)**

**Commonly known as:**      333 S. 31st Ave.
                            Bellwood, IL.

Permanent Index Number:  15-09-212-005-0000 Vol. 159

PARCEL 1:

THAT PART SOUTH OF ST. CHARLES ROAD AND WEST OF THE WEST LINE OF THE INDIANA
HARBOR BELT RAILROAD (FORMERLY CHICAGO, HAMMOND AND WESTERN RAILROAD) OF THE
SOUTH 1/2 OF THE NORTHEAST 1/4 (EXCEPT THE WEST 7 ACRES
THEREOF) OF SECTION 9, TOWNSHIP 39 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL
MERIDIAN, DESCRIBED AS FOLLOWS: BEGINNING ON THE WEST LINE OF ABOVE DESCRIBED
TRACT (BEING ALSO THE EAST LINE OF 31ST AVENUE, AS SHOWN ON
PLAT OF SUBDIVISION RECORDED OCTOBER 5, 1925 AS DOCUMENT NUMBER 9055419) 225
FEET SOUTH OF THE NORTH WEST CORNER OF SAID TRACT; THENCE NORTHEASTERLY
PARALLEL WITH THE NORTH LINE OF SAID TRACT, A DISTANCE OF 185 FEET; THENCE
SOUTHEASTERLY A DISTANCE OF 381.25 FEET MORE OR LESS TO A POINT IN THE SOUTH
LINE OF THE NORTHEAST 1/4 OF SAID SECTION ( BEING ALSO THE NORTH LINE OF OAK
STREET AS SHOWN ON PLAT OF SUBDIVISION RECORDED MAY 17, 1897 AS
DOCUMENT NUMBER 2539049) 390 FEET EAST OF THE SOUTH WEST CORNER OF SAID TRACT;
THENCE WEST ALONG THE SOUTH LINE OF THE NORTHEAST 1/4 OF SAID SECTION (SAID
SOUTH LINE BEING ALSO THE NORTH LINE OF OAK STREET HEREINBEFORE REFERRED TO) TO
THE SOUTH WEST CORNER OF SAID TRACT; THENCE ALONG THE WEST LINE OF SAID TRACT
(BEING ALSO THE EAST LINE OF SAID 31ST AVENUE) A DISTANCE OF 295.26 FEET MORE OR
LESS TO THE POINT OF BEGINNING, IN COOK COUNTY, ILLINOIS.

14

**EXHIBIT A-7**
**(Legal Description)**

LOT 23 IN OGDEN'S SUBDIVISION OF LOTS 138, 139 AND LOTS 142 TO 151 IN BRONSON'S ADDITION TO CHICAGO IN SECTION 4, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 1422 N. North Park Ave., Chicago, IL 60610. The Real Property tax identification number is 17-04-201-032-0000.

15

# EXHIBIT A-8
## (Legal Description)

UNIT 204 IN DAKIN COURT CONDOMINIUMS, AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE:
LOTS 1 AND 2 AND THE WEST 17 FEET OF LOT 3 IN GILBERT M. WEEK'S SUBDIVISION OF BLOCK 3 OF LAFLIN, SMITH AND DYER'S SUBDIVISION OF THE NORTHEAST ¼ (EXCEPT 1.28 ACRES IN THE NORTHEAST CORNER THEREOF) OF SECTION 20, TOWNSHIP 40 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS; WHICH SURVEY IS ATTACHED TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT NUMBER 00356460M TOGETHER WITH AN UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS

The Real Property or its address is commonly known as 1050 W. Dakin Street, Chicago, IL 60613-2937. The Real Property tax identification number is 14-20-201-030-1012

16

Illinois, Cook_Bulls A_Items 106, 131, 147, 154, 171, 174, 178__TD-ALR Assignment
202542762

# EXHIBIT A-9
## (Legal Description)

SUB LOT 3 IN THE ASSESSOR'S DIVISION OF LOT 109 IN BRONSON'S ADDITION TO CHICAGO, BEING A SUBDIVISION OF SECTION 4, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

The Real Property or its address is commonly known as 1559 North Wells Street, Chicago, IL 60610-1307. The Real Property tax identification number is 17-04-204-002-0000

17

# EXHIBIT A-10
## (Legal Description)

LOT 36 IN BLOCK 38 IN SUBDIVISION OF LOTS 30 TO 53 INCLUSIVE, AND LOTS 67 TO 90 INCLUSIVE IN CHICAGO LAND COMPANY'S SUBDIVISION OF BLOCK 38 OF SHEFFIELD'S ADDITION TO CHICAGO IN SECTION 31, TOWNSHIP 40 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as 1803 N. Winchester Ave., Chicago, IL 60622. The Real Property tax identification number is 14-31-409-027-0000.

18

Doc#. 1733357001 Fee: $52.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 11/29/2017 08:51 AM Pg: 1 of 3

**ASSIGNMENT OF MORTGAGE
AND ASSIGNMENT OF RENTS**

ColFin Bulls A Finance Sub, LLC, a Delaware limited liability company for itself and its successors and assigns ("**Assignor**"), the Mortgagee named in the mortgage and assignment of rents described below, for and in consideration of the sum of TEN DOLLARS ($10.00) lawful money of the United States of America, paid to it by McCormick 103, LLC, a Maryland limited liability company ("**Assignee**") the receipt of which is hereby acknowledged, and for other good and valuable consideration as described in that certain Loan Sale Agreement dated September 15, 2017 (the "**Loan Sale Agreement**") between Assignor and Assignee, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer and set over unto Assignee and without recourse, representations or warranties of any kind whatsoever except as specifically provided in the Loan Sale Agreement, all of the Assignor's right, title and interest in and to that certain Mortgage dated as of February 15, 2010, executed and granted by Veronica Yepez, a married woman in favor of MB Financial Bank, N.A., and recorded in the Cook County Recorder's Office on March 18, 2010, as Document No. 1007744003, and an Assignment of Rents recorded on February 15, 2010 as Document No. 1007744004 and encumbering all that certain land and improvements legally described on Exhibit A attached hereto.

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises hereby and thereby granted, described and assigned, or mentioned and intended so to be, within the appurtenances, unto the Assignee to and for its proper use and benefit forever.

WITNESS the due execution hereof this 1st day of November, 2017

Matthew Bramhall
By: Matthew Bramhall (Print Name)

_____ (Signature)
As Attorney in Fact for ColFin Bulls A Finance Sub, LLC,
a Delaware limited liability company

STATE OF Maryland )
                 ) SS.
COUNTY OF Baltimore )

    I, the undersigned, a Notary Public in and for said County, in the State aforesaid, do
hereby certify that Matthew Bramhall, personally known to me to be the same person(s) whose
name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and
acknowledged that he/she/they signed, sealed and delivered the said instrument, as his/her/their
free and voluntary act, for the uses and purposes therein set forth.

        Given under my hand and notarial seal, this 1st day of November, 2017

                                    _____
                                            Notary Public

                                    My commission expires: 1/30/18

JESSICA L. GONZALES
NOTARY PUBLIC
BALTIMORE COUNTY
MARYLAND
MY COMMISSION EXPIRES JANUARY 30, 2018

Prepared by & Mail to:
Noonan & Lieberman, Ltd.
105 W. Adams St., Suite 1800
Chicago, IL 60603

## EXHIBIT A

LOT 5 IN BLOCK 10 IN SUBDIVISION BY CALUMET AND CHICAGO CANAL AND DOCK COMPANY PARTS OF FRACTIONAL SECTIONS 5 AND 6, TOWNSHIP 37 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Commonly Known As:  8712 S. Commercial Avenue, Chicago, Illinois 60617
Permanent Index Number:  26-06-202-020-0000